**In re William A. KING, Debtor(s).**

**Bankruptcy No. 380–02421.**

United States Bankruptcy Court,
D. Oregon.

March 3, 1981.

Allan D. Sobel, Portland, Or., for Joseph I. Aizawa and John E. Hahn, for creditors of the debtor.

David Denecke, Beaverton, Or., for Cable Business Systems Co. and Clifford Schrock.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

On September 22, 1980 the debtor filed herein his petition for an order for relief under chapter 7 of 11 U.S.C. On October 1, 1980 an order was entered appointing an interim trustee. The § 341(a) meeting of creditors was held on November 3, 1980. On November 9, 1980 the debtor filed a motion to convert his case to a case under chapter 13 and at that time also filed a chapter 13 statement and a chapter 13 plan. A hearing upon the debtor's motion to convert was held on November 20, 1980 after notice to the debtor and to the chapter 7 trustee. At that time the court expressed concern as to whether the debtor was eligible for relief under chapter 13 because of the limitations imposed by 11 U.S.C. § 109(e). Following notice to the debtor, the creditors and other interested parties, a further hearing was held on February 12, 1981 to determine the eligibility of the debtor for relief under chapter 13. At this hearing the debtor appearing in person. The proceedings were reported by Linda Foster.

From the schedules filed by the debtor, from the files in adversary proceedings Nos. 80–0352, 80–0351 and 81–0008 and the representations made to the court at the time of the hearing, the following facts appear.

Schedule A–1 filed by the debtor in his chapter 7 case lists priority unsecured tax claims of $4,200. Schedule A–2 lists one secured creditor, Xerox, with an amount due of $7,229.76 and a value of the collateral of $6,000. Therefore the unsecured portion of the claim of Xerox is $1,229.76. Schedule A–3 lists unsecured claims totalling $394,922.46. Included in this total of unsecured claims is scheduled a disputed claim of Joseph Aizawa of $219,006.25; a disputed claim of John Hahn of $60,000; and a disputed claim of William Kallman of $70,000. On November 13, 1980 the debtor filed amended schedules showing eleven additional creditors. One of these additional creditors was the Willamette Falls State Bank, a fully secured creditor. Of the other ten, the debtor testified that there was a total amount owing on their claims of approximately $1,000.

It was contended by Aizawa and Hahn that the debtor did not qualify for relief under chapter 13 for the reason that his unsecured debts exceeded $100,000, the maximum limit imposed by 11 U.S.C. § 109(e). No contention was made that the secured debts exceeded the $350,000 limitation imposed by that section.

In its relevant portions § 109(e) provides that only "an individual with regular income that owes, on the date of the filing of the petition, non-contingent, liquidated, unsecured debts of less than $100,000 * * * may be a debtor under chapter 13 of this title." 11 U.S.C. § 101(11) provides that " 'debt' means liability on a claim." 11 U.S.C. § 101(4) provides:

"claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

It is to be noted that the term "claim" is broader than the term "debt" under the definitions contained in § 101(4) and § 101(11). It is also noted that § 109(e) refers to unsecured "debts" rather than unsecured "claims".

■ The monetary limits imposed by § 109(e) apply to "debts". Since the term "debt" is limited to *liability* upon a "claim", the court must make a determination of liability and amount due in the case of a disputed claim in order to determine what amount, if any, of the disputed claim should be included in determining the total amount of non-contingent, liquidated, unsecured debt owing at the time of the filing of the petition for relief.

No contention has been made that any of the claims scheduled by the debtor or otherwise shown by the testimony or representations made to the court are contingent claims. The court must, however, determine what part of the claims represent liquidated debts.

The term "liquidated" is not defined by the Bankruptcy Reform Act. We must therefore turn to other sources for a definition.

"Generally, whether a claim is contingent deals with the certainty of the liability. Whether a claim is liquidated involves whether the amount due can be determined with sufficient precision." *In re Bay Point Corp.*, 1 BCD 1635, 1639 (D.N. J.1975).

"The concept of liquidation has been variously expressed. The common thread throughout the cases, however, has been ready determination and precision in computation of the amount due. For instance, in the context of awards of interest on debts, Corbin on Contracts, Section 1046 at 284 (1964) has defined a liquidated debt as one that can be determined by mathematical computation. Some cases have stated the test as to whether the account due is capable of ascertainment by reference to an agreement or by simple computation." *In re Bay Point Corp.*, supra, 1639.

"The expression 'liquidated in amount' or 'liquidated', as impliedly construed by the court in this proceeding, connotes settled; adjusted; determined; fixed; made certain; ascertained; agreed upon by the parties; fixed by operation of law. As stated in 54 C.J.S. Liquidate p. 564:

'The word [liquidated] has been defined to mean adjusted; adjusted, certain, settled with respect to amount; settled; ascertained; determined; fixed; reduced to certainty; * * *. The term signifies that which is made certain and manifest; made certain as to what and how much is due; and it means that the amount has been ascertained and agreed on by the parties, or fixed by operation of the law.' " *In re Davis Mfg., Inc.*, 95 F.Supp. 200 (D.Kansas 1951).

The definition of the word "liquidated" was discussed in *In re Silver*, 109 F.Supp. 200 (E.D.Illinois 1952) as follows:

"The court said, *In re Cook*, D.C.Ga., 298 F. 125, at page 126:

'To liquidate a claim is to determine by agreement or litigation the precise amount of it.' Webster's International Dictionary; Bouvier's Law Dictionary.

"In *Clark, Jr. v. Dutton*, 69 Ill. 521, 523, the court, in discussing the liquidation of account, said:

'Bouvier says: A debt is liquidated when it is certain what is due and how much is due. Cum certum est an et quantum debeatur; for, although it may appear that something is due, if it does not also appear how much is due, the debt is not liquidated.'

"Vol. 2 Bouvier's Law Dictionary, Rawle's Third Revision, page 2026, defines Liquidated Demand:

'A demand the amount of which has been ascertained or settled by agreement of the parties, or otherwise.' "

It would appear from the above authorities that a debt is not liquidated if there is a substantial dispute regarding liability or amount. On the other hand it would appear that if there is no dispute as to liability but only as to amount, then a claim should

be treated as liquidated at least to the extent of the amount admitted by the obligor.

■ The claims scheduled by the debtor of Aizawa, Hahn and Kallman are included in three separate adversary proceedings filed in this court. The complaints in each of these adversary proceedings pray for both compensatory damages and punitive damages. Clearly, under the above definitions of the term liquidated, a claim for punitive damages is not a liquidated debt.

■ Adversary No. 80–0352 was instituted by the filing of a complaint by Joseph V. Aizawa and John E. Hahn as plaintiffs against the debtor which seeks a judgment for special damages of $20,000 and punitive damages of $40,000 based upon alleged fraudulent representations of the defendant. In the answer the defendant denies the operative facts alleged in the complaint, asserts an affirmative defense of the statute of limitations, an affirmative defense that such damages as the plaintiffs may have sustained were the result of their own abandonment of a patent application, asserts a counter-claim based upon alleged false misrepresentations of the defendants, a counter-claim for breach of contract and a counter-claim for slander. The answer seeks judgment for $14,050 in compensatory damages, $75,000 in general damages and $75,000 in punitive damages. At the hearing on February 12, 1981 no evidence was offered by the plaintiffs or the defendant in support of or in opposition to the claims of either of them. Under these circumstances the court must assume that there is a substantial dispute between the plaintiffs and the defendant as to both liability and the amounts of their respective claims. As a result the court finds that the plaintiffs' claim was not a liquidated debt owing by the defendant at the time of the filing of his motion to convert.

■ Adversary No. 81–0008 was instituted by the filing of a complaint by William R. Kallman, as plaintiff, against the debtor. The complaint seeks judgment for $20,000 in compensatory damage and $50,000 in pu-

nitive damages upon the ground of alleged fraudulent concealment by the defendant. No answer has yet been filed by the defendant. No evidence was presented at the hearing by either the plaintiff or the defendant in support of the plaintiff's claim or to show that the debtor's scheduling of this claim as a disputed claim was due to a substantial dispute as to either liability or amount. Upon this state of the record the court finds that the plaintiff's claim was not a liquidated debt owing by the debtor at the time of the filing of his motion to convert.

■ Adversary No. 80–0351 was instituted by the filing of a complaint by Joseph V. Aizawa as plaintiff against the debtor. The complaint seeks judgment for special damages of $85,548.05 and punitive damages of $100,000. No answer has been filed in this adversary proceeding. The debtor scheduled this claim as a disputed claim. Subsequent to the filing of the debtor's motion to convert, this claim was settled for the sum of $6,000, which sum is to be paid by the carrier under a policy of professional liability insurance issued to the debtor. The plaintiff contends, for the purpose of determining the amount of unsecured debt owing by the debtor at the time of the filing of his motion to convert, that this claim should be considered in an amount at least equal to the compensatory damages prayed for in the complaint rather than in the amount for which the claim was settled. The plaintiff is correct that for the purpose of § 109(e) the amount of debt to be included is the amount owing at the time of the filing of the petition for relief under chapter 13 or its equivalent, the filing of a motion to convert to chapter 13. On the other hand it cannot be said that at the time of the filing of the motion to convert this claim represented a liquidated debt in the amount of $85,548.05. At that time the claim was disputed and no agreement or determination had been reached fixing either liability or amount. It is apparent, from the difference between the amount of the claim asserted and the figure at which the settlement was reached, that there was a substantial dispute regarding both liabili-

ty and amount. This claim should therefore be treated as a liquidated debt only to the extent of $6,000.

 At the hearing it was asserted that Clifford Schrock or Cable Business Systems Company, whom Schrock represented, held a potential claim upon which no litigation had been instituted. It was represented that this claim concerned an application for a patent. The attorney for the claimant was unable to give any estimate of the damages suffered. The debtor stated that monies paid out by the creditor would have been considerably less than $2,000. This claim was not listed by the debtor in either the schedules first filed or the amended schedules. Upon this sketchy information the court concludes that this claim represents an unliquidated debt.

The following then is a summary of the non-contingent, liquidated, unsecured debts owing by the debtor at the time of the filing of his motion to convert to chapter 13:

| | | |
|---|---|---|
| Schedule A–1, Priority Unsecured Claims | | $4,200.00 |
| Schedule A–2, Deficiency upon Secured Claim | | 1,229.76 |
| Schedule A–3, Unsecured debts of $394,926.46, less the disputed claims of: | | |
| Aizawa & Hahn, Adv. No. 80–0352 | $60,000.00 | |
| Kallman, Adv. No. 80–0008 | 70,000.00 | |
| Aizawa, Adv. No. 80–0351 | 219,006.25 | |
| | $349,006.25 | |
| or a balance of | | $45,920.11 |
| Amended Schedules | | 1,000.00 |
| Aizawa Claim, Adv. No. 80–0351 | | 6,000.00 |
| Unsecured debts as scheduled or admitted by the debtor | | $58,349.87 |

 The figure of $58,349.87 represents the non-contingent, liquidated, unsecured claims owed by the debtor at the time of the filing of his motion to convert to chapter 13. Even if the Kallman claim in the amount of the compensatory damages claimed of $20,000 and the Schrock or Cable Business Systems Claim were included in the amount of $2,000, the liquidated debts would still only total $74,349.87, far short of the $100,000.00 limit imposed by § 109(e).

The debtor represented at the hearing that he had regular income as an attorney which income fluctuated from month to month but which had been increasing in recent months. No evidence was received to the contrary.

The court therefore concludes that the debtor is an individual qualified to be a debtor under chapter 13 of 11 U.S.C. and that an order for relief under chapter 13 should be entered herein.