**In re Helene KAUFMAN, Debtor.**

**Bankruptcy No. 87 B 20436.**

United States Bankruptcy Court, S.D. New York.

Nov. 17, 1988.

Nathan Horowitz, White Plains, N.Y., for debtor.

Javits, Robinson, Brog, Leinwand & Reich, P.C., New York City, for David Feldman.

## MOTION TO CONVERT DEBTOR FROM CHAPTER 13 TO CHAPTER 7

HOWARD SCHWARTZBERG, Bankruptcy Judge.

David Feldman, the holder of a disputed unsecured claim for $122,064 against the debtor, Helene Kaufman, has moved to reconvert the debtor's Chapter 13 case back

to Chapter 7 of the Bankruptcy Code on the ground that the debtor is not eligible to be a Chapter 13 debtor in accordance with 11 U.S.C. § 109(e) because her noncontingent, liquidated and unsecured debts exceed the statutory maximum of $100,000. The debtor opposes the motion on the ground that Feldman's claim is contingent and disputed.

## FINDINGS OF FACT

1. On September 18, 1987, Helene Kaufman filed with this Court her voluntary petition under Chapter 7 of the Bankruptcy Code. The debtor's bankruptcy schedules list her unsecured indebtedness as $235,752.84. Some of the listed debts were described as disputed, contingent and unliquidated, including the claim of David Feldman for $122,064.

2. On January 25, 1988, Feldman filed a proof of claim against the debtor, which included a claim for $122,064 due under a stock purchase contract, on the ground that the debtor was an undisclosed principal in connection with Feldman's sale of his stock in a corporation known as Davco Food Service, Inc. and that she was therefore liable for the payment of the notes issued by the purchaser.

3. On January 25, 1988, Feldman filed a summons and complaint with this court commencing an adversary proceeding objecting to the dischargeability of his claim pursuant to 11 U.S.C. § 523(a)(2)(A) on the ground that the debtor sold his stock interest in Davco Food Service, Inc. to Emil V. Gorla and accepted Gorla's promissory notes totalling $125,000 without knowing that Gorla was allegedly acting as the debtor's undisclosed agent. Feldman charges that he would not have sold his stock to Gorla had he known that the debtor was the undisclosed principal and that as a result of the debtor's fraudulent conduct she obtained property from Feldman to his detriment, because Gorla did not pay the notes in full, leaving an unpaid principal of $122,064, plus interest.

4. On August 1, 1988, the debtor converted her Chapter 7 case pursuant to 11 U.S.C. § 706(a) to a case under Chapter 13 of the Bankruptcy Code. On August 29, 1988, Feldman filed a proof of claim in the Chapter 13 case in the amount of $122,064, plus punitive damages.

5. On July 11, 1985, when Feldman entered into a written contract with Emil V. Gorla to sell to Gorla Feldman's 50 percent ownership of the stock of Davco Food Service, Inc., the debtor was then the owner of the other 50 percent of the Davco shares, having inherited her interest from her late husband, Adolph Kaufman.

6. The creditor, Feldman, claims that he later learned that Gorla was the undisclosed agent for the debtor, Helene Kaufman, and that she funded Gorla's purchase of the Davco shares from Feldman by mortgaging her house and liquidating a money market account which she controlled. Feldman contends that had he known that the debtor was the actual principal involved in the purchase of the Davco shares, he would not have entered into the transaction because he would not have wanted to rely on her credit status nor her ability to manage and operage Davco Food Service, Inc.

7. Pursuant to the written stock purchase agreement between Emil V. Gorla and David Feldman dated July 11, 1985, Gorla purchased Feldman's shares of Davco Food Service, Inc. for $175,000, of which $125,000 was payable in equal bi-monthly installments of $1,525.80, as evidenced by 96 monthly notes payable on the 10th and 25th day of each month, commencing September 10, 1988 to August 25, 1989, with interest at 8 percent per annum. In the event of a default for 30 days, the outstanding balance under the notes would be accelerated. The debtor, Helene Kaufman, signed the agreement as president of Davco Food Service, Inc., reflecting the consent of the corporation to the sale of Feldman's stock to Gorla.

8. Based on the language appearing on the face of the agreement and the notes issued by Gorla to Feldman pursuant to Gorla's purchase of Feldman's stock, it is apparent that Feldman did not contemplate that the debtor, Helene Kaufman, had any

personal involvement concerning Gorla's acknowledged obligation to Feldman.

9. On July 9, 1985, two days before Gorla entered into the stock purchase contract with Feldman, Gorla entered into a written agreement with the debtor, Helene Kaufman, which recited that the debtor agreed to provide the funds for Gorla's purchase of Feldman's stock in Davco Food Service, Inc. The agreement between Gorla and the debtor provides in relevant part as follows:

> "Gorla and Helene represent that all the additional funds to be used for the payment of the notes referred to in Exhibit "A" shall be paid to Gorla from Helene.

> "Gorla further acknowledges that he acts solely and wholly as the agent of Helene in this entire transaction referred to in Exhibit "A" and further that he had no monetary or actual interest in the stock of the corporation. He acknowledges that his sole interest is as a fiduciary for the benefit of Helene. Gorla agrees that he will make no claims, now or in the future for any interest monetary or otherwise in the corporation or the stock of the corporation which is the subject matter in Exhibit "A".

> "Gorla simultaneously agrees to execute a stock power in favor of Helene with the execution of these presents, and acknowledges that he has been represented by counsel of his choice, and he executes these agreements after advice of counsel.

> "Gorla further acknowledges that he will not seek any corporate office or directorship, shall vote the shares in his name at the request and direction of Helene, and will not seek to act in any capacity on behalf of the corporation and will not be empowered to execute any documents, bank resolutions, or any other agreements that will bind the corporation or pledge or encumber the stock.

> "Helene agrees to hold Gorla harmless from any claims, damages or any other action by DAVID FELDMAN, referred to in Exhibit "A", and further agrees to indemnify Gorla and save him harmless from any such claims."

10. The debtor reasons that Feldman's claim is contingent and ineligible for consideration under 11 U.S.C. § 109(e) because the debtor was not a party to the stock purchase agreement. The debtor maintains that Feldman's claim against her as an undisclosed principal under the stock purchase agreement between Gorla and Feldman "is an extrinsic" fact or event which must be proven at a trial on the merits in order to liquidate and make noncontingent the undisclosed principal's liability.

## DISCUSSION

A contingent claim is not counted in totalling the eligible unsecured debts of less than $100,000 that will permit an individual with regular income to be a debtor under Chapter 13 of the Bankruptcy Code. This point is expressed in 11 U.S.C. § 109(e) in pertinent part as follows:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less that $100,000 ... may be a debtor under Chapter 13 of this title.

A claim is contingent if the debtor's liability arises after the occurrence of some extrinsic fact or event reasonably contemplated by the debtor and the creditor which will trigger the liability of the debtor to the creditor. *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306–307 (9th Cir.1987); *In re Michaelsen*, 74 B.R. 245, 249 (Bankr.D.Nev.1987); *In re Albano*, 55 B.R. 363, 367 (N.D.Ill.1985). *In re Williams*, 51 B.R. 249, 250 (Bankr.S.D.Ind. 1984); *In re Lambert*, 43 B.R. 913, 923 (Bankr.D.Utah 1984); *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S. D.Tex.1980), *aff'd per Curiam*, 646 F.2d 193 (5th Cir.1981). The liability of an undisclosed principal under a written contract is not contingent merely by virtue of the nondisclosure because, unlike a guarantor whose liability arises only if the contingency of default comes into existence, an undisclosed principal's liability arises when his or her agent enters into 'the contract

with the other party. When an agent deals in his own name, and later the other party to the contract learns that the agent was really the agent for an undisclosed principal, the other party can elect to sue either the agent or the undisclosed principal for any default because both the agent and the undisclosed principal were unconditionally obligated to perform the contract. *In re Cohoes Industrial Terminal,* 78 B.R. 681 (Bankr.S.D.N.Y.1987) *aff'd* 87 Civ. 8919 (S.D.N.Y. May 2, 1988) *aff'd* 863 F.2d 45 (2nd Cir.1988); *Kirno Hill Corp. v. Holt,* 476 F.Supp. 134 (S.D.N.Y.1979); *Ardwin v. Englert,* 81 A.D.2d 960, 961, 439 N.Y.S.2d 720, 721 (App.Div. 3d Dep't 1981) *aff'd* 56 N.Y.2d 936, 439 N.E.2d 324, 453 N.Y.S.2d 608 (1982); *Unger v. Travel Arrangements, Inc.,* 25 A.D.2d 40, 47, 266 N.Y.S.2d 715, 723 (App.Div. 1st Dep't 1966); *Foreign Trade Banking Corp. v. Gerseta Corp.,* 237 N.Y. 265, 142 N.E. 607 (1923); Restatement (Second) of Agency §§ 4, 321, 322 (1957). No further act or extrinsic event was needed to trigger the undisclosed principal's liability under the contract. *Fostvedt v. Dow (In re Fostvedt),* 823 F.2d at 307. The undisclosed principal's liability did not depend on the contingency of a default in performance by the agent because the principal's obligation under the contract arose when the contract was executed. A dispute as to whether or not the principal-agency relationship existed is a matter of proof, but not an outside event or contingency which must occur in order to bring the principal's obligation into existence.

The debtor may dispute the allegation that Gorla was her agent and that she was an undisclosed principal with respect to Gorla's contract to purchase Feldman's stock, but if Feldman can establish this charge, the debtor will be deemed liable to Feldman under the contract as of its execution. Such liability is neither contingent nor unliquidated.

▆▆▆ The fact that the debtor disputes her liability to Feldman as an undisclosed principal, or has potential defenses or counterclaims that might reduce the claim, does not mean that his claim is not liquidated.

*In re Crescenzi,* 69 B.R. 64 (S.D.N.Y.1986); *In re Albano,* 55 B.R. 363, 364 (N.D.Ill. 1985); *In re Vaughan,* 36 B.R. 935, 938 (N.D.Ala.1984). A claim is liquidated when the amount due is capable of ascertainment by reference to an agreement or by computation. *In re Williams,* 51 B.R. 249, 250 (Bankr.S.D.Ind.1984); *In re Sylvester,* 19 B.R. 671, 673 (9th Cir. BAP 1982). Moreover, unlike the rule under 11 U.S.C. § 303(b)(1), where claims which are subject to a *bona fide* dispute may not be counted for purposes of filing an involuntary petition, 11 U.S.C. § 109(e) merely refers to noncontingent, liquidated unsecured debts and does not exclude disputed debts for purposes of eligibility under Chapter 13. *In re Crescenzi,* 69 B.R. at 66; *In re Albano,* 55 B.R. at 368; *In re Vaughan,* 36 B.R. at 939.

Accordingly, Feldman's noncontingent liquidated unsecured claim for $122,064 against the debtor as an alleged undisclosed principal under Feldman's written contract with Gorla, who is alleged to be the debtor's undisclosed agent, exceeds the statutory maximum of less than $100,000 for unsecured debts for purposes of eligibility under Chapter 13, notwithstanding that that the debtor vigorously disputes Feldman's claim.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Feldman's unsecured claim against the debtor for liability as an undisclosed principal under a written contract between Feldman and the debtor's alleged undisclosed agent, Gorla, is noncontingent, liquidated and in excess of $100,000.

3. The debtor is an individual who owed on the date of the filing of her Chapter 13 petition noncontingent, liquidated, unsecured debts in excess of $100,000, and is therefore ineligible to be a debtor under Chapter 13 of the Bankruptcy Code.

4. The movant's motion to reconvert the debtor's Chapter 13 case to a case under

Chapter 7 of the Bankruptcy Code is grant-
ed.

SETTLE ORDER ON NOTICE.